IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF PUERTO RICO

IN RE:

RAFAEL E. MARRERO NUÑEZ and
KEILA SARID CABALLERO NEGRÓN

Debtors

CASE NO. 23-02949 (ESL)

CHAPTER 13

FILED & ENTERED NOV/01/2024

OPINION AND ORDER

This case is before the court upon the Debtors' *Motion Requesting Order Authorizing Withdrawal of Funds in State Court* (dkt. #78) (the "*Motion for Withdrawal of Funds*") requesting an order authorizing and directing the Debtors to request the withdrawal of certain funds garnished and deposited in the state court, pre-petition, and that such funds be made payable to the Chapter 13 Trustee. Also before this court are the *Opposition* filed by Cooperativa de Ahorro y Crédito de Arecibo ("COOPACA") (dkt. #82), the Debtors' *Reply* and request for an order directing COOPACA to establish ownership of funds (dkt. #86), and COOPACA's *Opposition* to the *Reply* (dkt. #92) (the "*Sur-Reply*").

Jurisdiction

This court has jurisdiction over the subject matter and the parties pursuant to 28 U.S.C. §§ 1334 and 157(a). This is a core proceeding pursuant to 28 U.S.C. § 157(b).

Legal Issues

The issue pending before the court is whether the funds garnished and deposited in the State Court Case, pre-petition, constitute property of the Debtors' bankruptcy estate, and whether the court has the authority to order their transfer from the State Court.

Position of the Parties

Debtors state in the *Motion for Withdrawal of Funds* that, prior to filing the bankruptcy petition, COOPACA had garnished the salary of codebtor Rafael E. Marrero Nuñez ("Marrero") pursuant to an order to satisfy a judgment issued in a state court proceeding (the "State Court"), Case No. TB2020Cv00400, stylized as <u>COOPACA vs. Marrero Nuñez</u> (the "State Court Case"),

in the approximate amount of $34,181.56. They also stated that, after filing their bankruptcy petition, the Debtors moved the State Court to disburse the funds to the Chapter 13 Trustee. The request was denied on the grounds that the State Court Case was stayed by the filing of the bankruptcy petition. Consequently, the Debtors now move the bankruptcy court via motion in the main case for the withdrawal of the garnished funds deposited in the State Court Case.

Debtors allege that the funds garnished and deposited in the State Court Case belong to the Debtors "until otherwise determined by a court with jurisdiction" (dkt. #78, p. 1, ¶ 6) and are considered to be under *custodia legis*, legal principle which ensures "that once funds are deposited in court, they are under the legal custody of the court and are thus protected from interference by other parties giving opportunity to any party in interest to challenge it or claim an interest over those funds, including the defendant, a bankruptcy Trustee or the Debtor" (id., p. 1, ¶ 7). The Debtors argue that such monies are property of the bankruptcy estate in so far as title thereto has not been transferred to COOPACA by the State Court. The Debtors also argue that the "automatic stay provisions of the Bankruptcy Code prevent further action on these funds until the bankruptcy court determines their disposition, reinforcing their status as estate property", quoting Educ. Tech. Coll., Inc. v. Atue Real Estate S.E. (In re Educ. Tech. Coll., Inc.), 643 B.R. 301 (Bankr. D.P.R. 2022) (dkt. #78, ¶ 18).

COOPACA opposes the Debtors' request, alleging that there is no dispute "that the judgment and judicial writ in favor of the Coopaca for the garnishment of the Debtor's salary were issued before the   bankruptcy petition was filed. The garnishment of the wages by the court's marshal was made pursuant to and in compliance with the state court judgment and writ, for the benefit of the judgment creditor, Coopaca. Also, such wages/funds were garnished prepetition" (dkt. #82, pp. 1-2, ¶ 5). COOPACA further argues that the garnishment "was continuous and was executed to satisfy a final, firm, and unappealable judgment, order, and writ" (id., ¶ 6). Such is the process allowed under Puerto Rico law, namely 32A L.P.R.A. Ap. V, Rule 51.2. "Once the Marshal has effectively garnished the funds, the only remaining procedural step is to file a simple

motion to withdraw the consigned funds. No further substantive determination is necessary, as the funds already belong to the creditor, in this case, Coopaca" (id., ¶ 9).

Debtors counter COOPACA's *Opposition* alleging that the U.S. Supreme Court in United States v. Whiting Pools, Inc., 462 U.S. 198, 208-09 (1983), concluded that prepetition seized funds are property of the bankruptcy estate. Thus, the Debtors argue that garnished funds are property of the estate until the same are transferred to COOPACA or the title of garnished property passes prepetition to COOPACA.

In its *Sur-Reply*, COOPACA differentiates Whiting Pools from the instant case, alleging that in said case the Internal Revenue Service ("IRS") seized tangible personal property for unpaid taxes pre-petition, which the court concluded was property of the estate as follows: "the reorganization estate includes property of the debtor that has been seized by a creditor prior to the filing of a petition for reorganization" (dkt. #92, p. 2, ¶ 4, quoting Whiting Pools, 462 U.S. at 209). COOPACA also alleges that the court in Whiting Pools held that 11 U.S.C. § 542(a) authorized the turnover of the seized property in question. In contrast, COOPACA argues that the instant case concerns wages garnished following the delivery of a writ of execution for a judgment entered in favor of COOPACA, amounts which are "not being held by an entity" as required under 11 U.S.C. § 542(a) (dkt. #92, p. 3, ¶ 8) and are not a voidable preference or transfer because the statutory criteria are not met.

Applicable Law and Discussion

A.    The Bankruptcy Estate

A bankruptcy estate is created and is comprised of "all legal or equitable interests of the debtor in property *as of the commencement of the case*", 11 U.S.C. § 541(a)(1) (italics added), and the "[p]roceeds, product, offspring, rents, or profits of or from property of the estate, except such as are earnings from services performed by an individual debtor after the commencement of the case." 11 U.S.C. § 541(a)(6). The statutory language of Section 541(a) evinces congressional intent to include a broad range of property. See, City of Springfield v. Ostrander (In re LAN

Tamers, Inc.), 329 F.3d 204 (1st Cir.2003), citing United States v. Whiting Pools, Inc., 462 U.S. 198, 204–05 (1983).

A bankruptcy court must look to state law or other applicable non-bankruptcy law to determine whether a debtor has a pre-petition property interest. See, Butner v. United States, 440 U.S. 48, 55 (1979) ("Property interests are created and defined by state law. Unless some federal interest required a different result, there is no reason why such interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding"). "The question of whether an interest claimed by the debtor is 'property of the estate' is a federal question to be decided by federal law; however, courts must look to state law to determine whether and to what extent the debtor has any legal or equitable interests in property as of the commencement of the case." Wood v. Premier Capital, Inc. (In re Wood), 291 B.R. 219, 224 (1st Cir. BAP 2003).

B.      Process to Enforce a Judgment for the Payment of Money

A party who has obtained a final judgment in its favor may execute the same through the mechanism provided in Rule 51 of the Puerto Rico Rules of Civil Procedure, which governs the procedures for the execution of judgments entered in a civil suit brought before the General Court of Justice. See, 32A L.P.R.A. Ap. V, R. 1 and 51. The prevailing party may execute a state court judgment within five (5) years from the same becoming final. See, 32A L.P.R.A. Ap. V, R. 51.1.

Rule 51.2 of the Puerto Rico Rules of Civil Procedure governs the process to enforce a judgment for the payment of money and provides the following:

> [The] [p]rocess to enforce a judgment or order for the payment of money and to collect costs awarded by the court shall be a writ of execution. The writ of execution shall specify the terms of the judgment and the amount due. A writ of execution shall be directed to the marshal and delivered to the interested party. In all execution cases, including those in which a judicial sale is ordered, the marshal shall deliver the writ duly served to the clerk with any surplus in the marshal's possession within fifteen (15) days after the date of such execution. A writ of execution may issue upon one or more judgments or orders in the action. The writ of execution shall issue under the hand of the clerk and the seal of the court.

When service of the writ of execution does not fully satisfy the judgment or has proved fruitless, another writ need not issue. The marshal shall forthwith provide proof of each service on the back of the true and exact copy of the writ. When the totality of the judgment is satisfied by only one service, or when the last service satisfies the judgment, the marshal shall make proof of service on the original writ of execution.

32A L.P.R.A. Ap. V, Rule 51.2 (official translation).

C.      *In Custodia Legis* Doctrine

The phrase *in custodia legis* "is traditionally used in reference to property taken into the court's charge during pending litigation over it." Philadelphia Indemnity Insurance Company v. Providence Community Action Program, Inc, 2017 WL 354279, at *3 (D.R.I. 2017), quoting Black's Law Dictionary 783 (8th ed. 2004). "[U]nlike a mere attachment, the court's decision to place the property *in custodia legis* divest[s] [the debtor] of legal title and [leaves] him with only a contingent right to the property." Davis v. Cox, 356 F.3d 76, 94 (1st Cir. 2004) (reviewing the claim of a receiver under Maine law).

It has long been asserted that property and funds in the registries of federal courts are not, as a general rule, subject to writs of attachment or garnishment. See, *e.g.*, The Lottawanna, 87 U.S. 201 (1873); Law Offices of David Efron, P.C. v. Candelario, 842 F.3d 780 (1st Cir. 2016) (holding that funds deposited in the registry of a federal district court are protected from garnishment or attachment, and may not be transferred from the federal registry to a state court unless accompanied by the concomitant transfer of the case). "The doctrine which bars attachment of property *in custodia legis* is based on the desirability of avoiding a clash between judicial jurisdictions which would result from any attempt to use the process of one to seize assets in the control of another judicial authority ... [especially] where the judicial departments belong to different sovereignties, as in the case of garnishment process issuing out of a state court to attach property in the hands of a receiver of the federal Bankruptcy Court". In re Quakertown Shopping Center., Inc., 366 F.2d 95, 97 (3rd Cir. 1966).

"More specifically, the common law doctrine of *custodia legis* prohibits any attachment of property in a court's registry that would prevent the court from allocating the property in accord

with the purpose for which it was deposited. The doctrine applies where a court issues an order that interferes with the jurisdiction of another court, generally that of another sovereign, and impedes the latter's ability to dispose of property in its registry. Thus, under the doctrine of *custodia legis,* funds deposited in the registries of federal courts may not be attached 'except by the order of the judge or judges of said courts.' " U.S. v. Van Cauwenberghe, 934 F.2d 1048, 1062 (9th Cir. 1991) (citations omitted). This principle has been reaffirmed in subsequent cases.

With respect to the Debtors' arguments as to the applicability of the doctrine of *in custodia legis* in the instant case, this court agrees with Debtors' contention that in "the case of GMAC v. Superior Court of P.R., 85 D.P.R. 329[, 1962 PR Sup. LEXIS 246 (1962) (official translation)], it is established that funds garnished and deposited in court are symbolically in the custody of the law and beyond the control of either party" (dkt. #78, ¶ 8). However, the facts in GMAC are clearly distinguishable from this case. In GMAC there was a controversy as to the entitlement of funds and their priority, as there were two competing orders to secure the effectiveness of judgments over the same funds issued in two separate cases. In the instant case, there is no dispute that the wages garnished to satisfy the judgment in favor of COOPACA in the State Court Case belong to codebtor Marrero, and no other party – besides the Debtors –claims entitlement to said funds.

This court also does not question or find fault in Debtors' allegation that "Cooperativa Cent. de P.R. v. Flores, 68 D.P.R. 726 [,] highlights the importance of court-appointed custodians in maintaining the *custodia legis* status of attached goods, indicating that proper court procedures must be followed to ensure that the goods remain under legal custody" (dkt. #78, ¶ 8). However, the court notes that in Flores, the fungible goods attached where determined not to be *in custodia legis* when they were attached pursuant to the order of attachment issued by the District Court of San Juan because it was the marshal who designated the depository; the state court which has issued the judgment did not designate the depository for the property which was to be attached. The statute pursuant to which the goods were attached, which is now governed by the Puerto Rico Rules of Civil Procedure, granted the power to designate the depositary to the court and not to the

marshal. See, Cooperativa Cent. de P.R. v. Flores, 68 D.P.R. 726, 1948 PR Sup. LEXIS 342 (1948) (official translation). Flores is further distinguishable from the instant case by having two competing attachments over the same property. See, id. In contrast, there is no controversy as to the validity or priority of the garnishment in the instant case. Moreover, the U.S. Court of Appeals for our First Circuit (the "First Circuit") declined to follow the Flores decision in Goya Foods, Inc. v. Wallack Management Co., et al., 290 F.3d 63 (1st Cir. 2002), stating that:

> [Flores] involved an attachment of commercial goods owned by a merchant defendant. Pursuant to the trial court's order, a marshal inventoried the goods in the defendant's shop and designated a depository. Id. at 673. The court subsequently ordered the goods sold at public auction. Id. at 673–74. The Supreme Court of Puerto Rico halted the sale and voided the attachment on the ground that the goods were not *in custodia legis* (and, therefore, not properly seized) because the marshal lacked the authority to designate a depository. Id. at 675–76. Whatever Flores may teach as to how attachments of fungible goods must be handled—a matter on which we take no view—we do not read the decision as mandating, without exception, strict compliance with Rule 56.4. Indeed, it seems safe to conclude that the Puerto Rico Supreme Court's subsequent decision in Suarez, plainly relaxing Rule 56.4's technical seizure requirements, 85 P.R.R. at 529, trumps the appellants' proposed reading of Flores.

290 F.3d at 73-74. This court agrees with the First Circuit's holding in Goya and takes no further view.

D.      Discussion

Here, it is uncontested that the monies garnished by COOPACA are codebtor Marrero's wages, which were garnished pre-petition pursuant to Rule 51.2 of the Puerto Rico Rules of Civil Procedure to satisfy a final judgment issued in the State Court Case in favor of COOPACA. The Debtors now move this court for the withdrawal of the garnished funds deposited in the State Court via motion in the bankruptcy case and not by adversary proceeding to recover "money or property" under Fed. R. Bankr. P. 7001. The court notes that the Debtors have not alleged that the garnishment of funds in favor of COOPACA constitutes an avoidable transfer pursuant to Section 547(b) of the Bankruptcy Code, 11 U.S.C. §547(b), nor have they requested the turnover of the garnished funds to the bankruptcy estate under Section 542 or 543 of the Bankruptcy Code,

11 U.S.C, §§ 542, 543. The court further notes that the Debtors have not contested the garnishment's validity, alleged that it is contrary to law or otherwise null. From the uncontested facts before this court and the legal basis invoked in the Debtors' request, the court concludes that the funds garnished pre-petition to satisfy a final judgment in favor of COOPACA are not property of the bankruptcy estate, and that COOPACA had a right to make valid the pre-petition judgment entered in the State Court Case.

As stated above, funds deposited in a court belonging to a different jurisdiction may not be attached or garnished, and may not be transferred from the registry without leave of the court exercising custody under the doctrine of *in custodia legis*. With the above framework in mind, the *Motion for the Withdrawal of Funds* fails to identify grounds which would give this court the authority to interfere with the custody of the State Court.

Therefore, the Debtors' *Motion for the Withdrawal of Funds* (dkt. #78) is hereby DENIED.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 1st day of November 2024.

Enrique S. Lamoutte
United States Bankruptcy Judge